STOKER, Judge.
Plaintiff-appellant, Flora Howell, sued her employer, defendant-appellee, Savoy Medical Center (Savoy) and its insurer, American Casualty Company, for workmen’s compensation benefits. The plaintiff contends she suffered an accident while pushing and pulling food carts during her brief employment with Savoy as a dietary aide. The trial judge concluded that plaintiff had failed to prove an on-the-job accident. We affirm.
FACTS
Flora Howell was employed by Savoy on September 6, 1986 at the age of 23 years. She was hired for a 90-day probationary period which apparently is standard procedure at Savoy. Plaintiff was subsequently terminated by Savoy on November 24, 1986. According to her personnel file, the termination was due to her unsatisfactory work and having several complaints lodged against her.
Plaintiff was hired at Savoy as a dietary aide whose official duties included preparing trays for patients, bringing trays to patients’ rooms, dish and pot washing and mopping floors. In addition to that, plaintiff was also required to push and pull a food cart to patients’ rooms. According to plaintiff’s uncontradicted testimony, she spent approximately an hour a day pushing and pulling the food carts during her 2-month and 18-day tenure of employment with Savoy. She used her wrists, pushed outward and bent back, to push the food cart.
*1317 Plaintiff and her husband testified that a week or two after starting work at Savoy her arms began to hurt, causing her to complain to co-workers about the pain in her arms. Subsequently, she experienced swelling, numbness and tingling in her hands. She stated the pain became so unbearable at one point that she verbally informed her supervisor at Savoy, “Miss Joan,” of her complaints. Nevertheless, Miss Joan was not called to testify by either side at trial.
In any event, plaintiff continued to work at Savoy after her arms began to hurt. Sometime in late September 1986, plaintiff approached her physician, Dr. Kulkarni, an obstetrician and gynecologist, in the doctors’ lounge of Savoy. She complained to Dr. Kulkarni of pain in her arms. After a brief examination, he advised her that it was probably a pulled or strained muscle, and he prescribed Anaprox, a muscle relaxer, and Parafon Forte for the pain. Plaintiff stated that she did not visit a physician again for the injury at issue until June 1987. Plaintiff did not file any written report of her complaints as to sore forearms with Savoy, nor did she lodge a written report of any occupational injury involving injured arms or hands from pushing and pulling a food cart until May 12, 1987, some eight months after the alleged injury. Plaintiff admitted to being fully informed by Savoy of the reporting procedure for alleged on-the-job injuries; and, in fact, she filed three separate accident reports while employed at Savoy. One report involved a crushed finger which occurred on September 17, 1986; another report involved an injured finger from a trash compactor accident which occurred on September 19, 1986; and the last report involved a steam burn occurring on November 6, 1986. For each of the enumerated injuries plaintiff reported the accident to Savoy, filed an appropriate accident report and was treated by a physician at Savoy’s hospital. Plaintiff did not make any complaint of sore forearms, hands or wrists from pushing and pulling food carts to the physicians during any of the examinations of injuries described above. At the time of her notification of termination from Savoy, plaintiff did not voice any complaint regarding any injury to her forearms or wrists, or both.
Immediately after plaintiff’s termination from Savoy on November 24, 1986 she was employed at Moosa Memorial Hospital as a housekeeper. She worked at Moosa until October 23, 1987. Plaintiff was hired at Moosa to accomplish similar duties as those accomplished at Savoy. However, she testified that the duties were lighter and the food carts required to be pushed were less bulky than those located at Savoy. Plaintiff worked an average of 52.7 hours per week at Moosa. In her job application to Moosa, she denied any disabilities or pain of any kind from any injury or accident; further, in the physical examination required for employment at Moosa, plaintiff denied any physical disability or impairment.
Plaintiff obtained a second job at the Restaurant Acadienne on or about October 12, 1987. She was employed as a waitress. Again, plaintiff was required to fill out a job application for this employment. In that application plaintiff denied any physical condition which would limit her ability to perform her job. At the time of trial plaintiff was still employed as a waitress at the Restaurant Acadienne.
As stated previously, no additional medical treatment was sought by plaintiff after the initial consultation with Dr. Kulkarni until June 8, 1987. On that date, Ms. Howell “consulted” with Dr. LaFleur in the hospital halls of Moosa Memorial Hospital. She complained of numbness in the area from the elbow to the wrist of her right arm. At that time Dr. LaFleur recommended an EMG to rule out neural defects. Plaintiff stated she could not afford such a test and did not consult with Dr. LaFleur again.
Plaintiff next sought medical treatment at University Medical Center on July 7, 1987. She was treated by Dr. Prejean. She complained of pain in both of her arms with numbness and tingling in her hands, especially the right hand. Dr. Prejean diagnosed plaintiff’s injury as bilateral median nerve entrapment, or carpal tunnel syn *1318 drome. The diagnosis was confirmed by subsequent nerve conduction studies of plaintiffs upper extremities.
TRIAL COURT ACTION
Plaintiff filed this suit on October 19, 1987. The trial judge rendered judgment in favor of defendants, Savoy and American Casualty Company, dismissing plaintiffs case. Plaintiff appeals the dismissal, re-urging her claim for worker’s compensation benefits, penalties and attorney’s fees.
ASSIGNMENTS OF ERROR
Appellant urges three assignments of error:
(1) That the trial court erred in concluding that plaintiff did not prove by a preponderance of evidence an accident while employed by Savoy;
(2) That the trial court erred in not finding that Ms. Howell was disabled; and
(3) That the trial court erred in not finding Savoy and its insurer arbitrary and capricious, such that penalties and attorney’s fees should be assessed against them.
LAW
In order to recover benefits under the Louisiana Worker’s Compensation Law an employee must establish that (1) an accident occurred, (2) that the employment caused the accident, (3) that the accident caused the injury and (4) that the injury caused the disability. Ewell v. Schwegmann Giant Super Markets, 499 So.2d 1192 (La.App. 5th Cir.1986). The employee must establish the work accident causing the injury by a preponderance of the evidence, i.e. “the testimony, as a whole, must show that more probably than not the employment accident caused the disablility.” West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1147 (La.1979).
TRIAL COURT’S REASONS FOR JUDGMENT
As we understand the trial court’s reasons for judgment, it did not reject the medical testimony that the plaintiff is presently disabled to some degree by reason of bilateral median nerve entrapment. Rather, in holding that the plaintiff had not proved her case by a preponderance of the evidence, the trial court noted certain factors which gave it concern as to whether the disability had resulted from an accident at work. We will discuss those factors and the presumptions urged upon us by appellant.
PRESUMPTION OF CAUSAL CONNECTION
Appellant urges that she is entitled to a presumption of causal connection between the required duty at Savoy involving pushing of food carts and the disabling condition she admittedly suffers from today. It is well established that if a healthy employee suffers an accident and thereafter disabling symptoms appear and continue, and if the medical evidence shows a “reasonable possibility” of causal connection, then a presumption of causal connection should follow. The Supreme Court stated this principle in Lucas v. Ins. Co. of America, 342 So.2d 591 (La.1977), as follows:
“A claimant’s disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.” Id. at 596.
In our opinion this presumption is of little use to plaintiff on the issue of causal connection in this case. The medical expert testimony, carefully reviewed by this court, does not establish a reasonable possibility of causal connection between the plaintiff’s activity at Savoy and her condition.
MEDICAL TESTIMONY
A brief review of the medical evidence and testimony reveals the following determinations. Dr. Kulkarni was not called to testify, but he provided his medical record on Flora Howell. It illustrates to us that *1319 plaintiff visited Dr. Kulkarni, her obstetrician and gynecologist, on numerous occasions, never showing any hesitancy to visit with him for the various ailments and complaints enumerated in the record. However, the record sheds no light on the causation of the current condition suffered by plaintiff. It simply indicates that plaintiff suffered some type of strain in her right arm on or about September 30, 1986. It did not provide a reasonable possibility that the plaintiffs current wrist and hand injuries were caused by any work requirements at Savoy.
Further, Dr. LaFleur stated in his deposition that his brief examination of plaintiff in June of 1987 revealed a normal examination with subjective complaints of pain in the right arm only. He opined that carpal tunnel syndrome can be caused by many things, one of which could be an occupational cause. He could not provide an opinion as to the cause of plaintiffs current complaints.
Dr. Prejean agreed that carpal tunnel syndrome can have many causes, one of which could be an occupational activity. However, he stated that the activity would have to be of a highly repetitive nature and probably would have to occur over more than a one year period. When asked if the pushing and pulling of the food carts could have aggravated a pre-existing condition of plaintiff, the doctor opined that the history from the plaintiff did not “go along with median nerve entrapment.”
Dr. Domingue, who did not examine the plaintiff but simply reviewed the nerve conduction studies, was asked his opinion as to the likelihood of the pushing and pulling of food carts causing carpal tunnel syndrome. He stated that he had never noted any reference to such an association in medical literature or in any of the patients he had seen. Dr. Domingue stated that anyone can get carpal tunnel syndrome.
Finally, Dr. Dugas, at one time the chief resident in orthopedics at LSU Medical Center, could not say that pushing and pulling the carts could have been the cause of the carpal tunnel syndrome suffered by plaintiff. He could say, assuming that Ms. Howell was predisposed to carpal tunnel syndrome and that an accident actually occurred at Savoy involving pushing and pulling of hospital carts immediately followed by symptoms, the accident could have caused the condition complained of. Nevertheless, we believe this opinion by Dr. Dugas begs the question. Although firmly establishing that plaintiff currently suffers from carpal tunnel syndrome and did so as early as the summer of 1987, the medical testimony did not establish plaintiff’s version of the cause of the disability. None of the doctors conclusively linked the disabling condition with any work requirements at Savoy. Thus, plaintiff did not establish by a preponderance of the evidence that the employment at Savoy caused her disability.
Further, the plaintiff alleges that she was in good health before her employment with Savoy and later the symptoms of carpal tunnel syndrome appeared and continuously manifested themselves afterwards. Plaintiff sought to prove this allegation through the testimony of plaintiff, her husband and several co-workers. None of the co-workers conclusively established when the plaintiffs symptoms appeared, how often they occurred, and how long they manifested themselves. The co-workers testified they did not know plaintiff in a familiar way before her employment with Savoy and could not testify to her general state of health either before or after the employment at Savoy.
For the reasons given above we hold that the presumption of causal connection does not apply in the case before us.
PROOF BY CLAIMANT’S OWN TESTIMONY
The appellant urgues that we should reverse the trial court’s finding by following the approach of the Louisiana Supreme Court in West v. Bayou Vista Manor, Inc., supra. In particular she urges that her own testimony should prevail over any adverse inferences which the evidence might suggest.
In West a nurse’s aide injured her back while lifting a heavy patient in a nursing *1320 home. She continued working in pain on the following day. Later, she took several days off from work, returned to work 12 days after the incident, worked another day experiencing even greater pain, and finally reported her continuous symptoms to her doctor, some 21 days after the accident occurred. The trial court ruled against the plaintiff, holding she had not proven that a work accident caused her injuries by a preponderance of the evidence. The court of appeal affirmed. The Supreme Court reversed, holding that the trier of fact should accept as true the uncontradicted testimony of a witness even though the witness is a party, at least in the absence of circumstances in the record casting suspicion on the reliability of the testimony. West, supra, page 1150.
We find that the facts of West are distinguishable from those in the instant case. Unlike the situation in West, the plaintiff here did not experience an “accident” in the same sense that West did when she suffered injury lifting a patient. Unlike West, the plaintiff here did not claim a disability arising from her carpal tunnel syndrome within a short period of time. Moreover, the plaintiffs version presents too many inconsistencies, too many discrepancies disclosed in the accident reports and job applications, and too little medical testimony consistent with the plaintiff’s version of events, to apply the rule of law enumerated in West. As the trial court noted, the plaintiff in the instant case did not complain of symptoms consistent with carpal tunnel syndrome until June 1987, some eight to nine months after the alleged accident. Plaintiffs prior complaint to Dr. Kulkarni resulted in a diagnosis of a strained right arm, which is not consistent with the later diagnosis of bilateral median nerve entrapment. The plaintiff reported no numbness or tingling to Dr. Kulkarni and did not even mention her hands or wrists to him which, according to the plaintiff and her husband, were causing her excruciating pain during that time. It is difficult to believe that plaintiff, who had no problem visiting the doctor and making known her other bodily complaints, would never mention her hands and wrists to Dr. Kulkarni.
It is significant that plaintiff worked for Moosa immediately after her termination from Savoy accomplishing similar duties there. We find no error in the trial court’s finding that “[i]f she did suffer such an industrial accident, it could have occurred while she was in the employ of Moosa Memorial Hospital of Eunice.” The plaintiff did not indicate any injury or disabling condition arising out of her employment at Savoy on her job applications at Moosa and the Eunice restaurant. Plaintiff was quite familiar with the reporting procedure at Savoy, as evidenced by her alacrity in reporting the three injuries suffered at Savoy and described above. Nevertheless, she did not file a written report at Savoy concerning the alleged accident involving food carts until May 1987. Finally, as noted previously, the self-serving testimony of the claimant is unsupported by the medical testimony.
CONCLUSION
We agree with the trial court that the inconsistencies noted above indicate that plaintiff was not injured at Savoy Medical Center. A court of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong; and, where there is conflict in the testimony, reasonable valuations of credibility and reasonable inferences of fact should not be disturbed upon review. Rosell v. Esco, 549 So.2d 840 (La.1989). In applying this standard we find that the trial court’s finding of fact should stand.
The record in this case supports the trial court’s stated reasons for judgment. We cannot say that the trial judge’s evaluations of credibility and his factual finding that Flora Howell did not prove a work accident causing her disabling condition by a preponderance of the evidence are manifestly erroneous.
In view of our holding it is not necessary that we consider plaintiff’s assignments of error numbered two and three.
• For the reasons given above the judgment of the trial court is affirmed. The *1321 plaintiff-appellant is assessed with the costs of this appeal.
AFFIRMED.